# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Cathy L. Waldor |
| v. | : | |
| | : | Mag. No. 24-9307 |
| STEVEN D. STANKOVITS | : | |
| | : | **CRIMINAL COMPLAINT** |

I, Michael Coccaro, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Social Security Administration Office of the Inspector General, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof:

      by phone
_____
Michael Coccaro
Special Agent
Social Security Administration
Office of the Inspector General

Special Agent Coccaro attested to this Complaint by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A) on this ____ day of November, 2024, in the District of New Jersey.

      s/Cathy L. Waldor 11/25/24
_____
Honorable Cathy L. Waldor
United States Magistrate Judge

## ATTACHMENT A

## COUNTS ONE-FOUR
(Wire Fraud)

On or about the dates set forth below, in Middlesex County, in the District of New Jersey, and elsewhere, the defendant,

## STEVEN D. STANKOVITS,

did knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and for the purpose of executing this scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds by causing the Social Security Administration to transmit the funds referenced below, each constituting a separate count of this Complaint.

| Count | Approximate Date | Description |
| --- | --- | --- |
| One | October 1, 2021 | Wire of approximately $3,479 from the Kansas City Regional Financial Center, Bureau of the Fiscal Service (the "KSFC"), in Missouri, on behalf of the Social Security Administration (the "SSA"), to a Wells Fargo account ending in 1802 (the "1802 Account") in New Jersey. |
| Two | November 3, 2021 | Wire of approximately $3,479 from the KSFC in Missouri on behalf of the SSA to the 1802 Account in New Jersey. |
| Three | December 3, 2021 | Wire of approximately $3,479 from the KSFC in Missouri on behalf of the SSA to the 1802 Account in New Jersey. |
| Four | January 3, 2022 | Wire of approximately $3,671 from the KSFC in Missouri on behalf of the SSA to the 1802 Account in New Jersey. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE
(False Statement)

On or about July 7, 2020, in Middlesex County, in the District of New Jersey and elsewhere, the defendant,

**STEVEN D. STANKOVITS,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by submitting a Disability Update Report to the Social Security Administration that stated under penalty of perjury that STANKOVITS had not worked for someone or been self-employed since June 2018. This statement and representation was false because, as STANKOVITS then and there knew, STANKOVITS worked after June 2018.

In violation of Title 18, United States Code, Section 1001(a)(3).

## ATTACHMENT B

I, Michael Coccaro, am a Special Agent with the Social Security Administration Office of the Inspector General. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, the statements of individuals, and my review of reports, documents, and other items of evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Background

1. The United States Social Security Administration ("SSA") is an independent agency of the United States Government whose primary responsibility is to administer Social Security, which is a social insurance program consisting of retirement, disability, and survivors' benefits.

2. The object of the Disability Insurance Benefit ("DIB") program is to replace part of the earnings lost due to a physical or mental impairment. Monthly benefits are paid to the eligible disabled person and their eligible auxiliary beneficiaries, such as children, throughout the period of disability. An individual meets the definition of disability if he/she is unable to perform past relevant work, but also cannot perform any other type of work because of a physical or mental impairment which has lasted, or is expected to last, for at least 12 months, or which can be expected to result in death.

### Receipt of Disability Insurance Benefits ("DIBs")

3. On or about November 19, 2007, the Defendant, Steven D. Stankovits ("STANKOVITS"), applied to the DIB program. This application stated that STANKOVITS was last employed in August 2006, and that STANKOVITS was not self-employed in 2005 through 2008. On or about April 17, 2008, STANKOVITS's application was denied.

4. On or about July 1, 2008, STANKOVITS applied for reconsideration. This application likewise stated that STANKOVITS was last employed in August 2006, and that STANKOVITS was not self-employed in 2005 through 2008. On or about October 21, 2008, STANKOVITS's application for reconsideration was denied.

5. On or about December 19, 2008, STANKOVITS requested a hearing concerning his eligibility for DIBs. Again, STANKOVITS's application stated that

he was last employed in August 2006, and that STANKOVITS was not self-employed in 2005 through 2008.

6. On or about October 6, 2010, STANKOVITS gave the following testimony under oath before an SSA Administrative Law Judge ("ALJ"):

> ALJ: So was your last job as an investigator for the ME's [Medical Examiner's] Office?
>
> STANKOVITS: Yes, sir.
>
> ALJ: Ok, tell me the dates of that job.
>
> STANKOVITS: I worked there from uh 2000, May 2000, until 2006, uh June of 06 on a full-time basis. I worked there on a per diem basis from Summer 1995 through April or May of 2000.

Following this hearing, the ALJ found that STANKOVITS was eligible for DIBs retroactive to February 2007.

7. On or about November 23, 2015, in response to an inquiry from SSA about his disclosed self-employment earnings in 2013 and 2014, STANKOVITS completed a form in which he declared under penalty of perjury that he had not been self-employed since January 2013 and that he "did not work" during the referenced time period.

8. On or about December 26, 2017, STANKOVITS submitted a form to SSA. STANKOVITS's submission listed May 25, 2010, as the date of his latest medical disability decision. The form asked: "Since the date of your last medical disability decision have you worked?" STANKOVITS responded by checking a box to indicate "NO".

9. On or about July 7, 2020, STANKOVITS submitted a form to SSA regarding the report period from June 2018 to the present. STANKOVITS's submission declared under penalty of perjury that STANKOVITS had not worked for someone or been self-employed since June 2018.

10. STANKOVITS received a cumulative $585,629.80 in DIB payments, including $390,508.80 for STANKOVITS and $195,121 for STANKOVITS's auxiliary beneficiaries, including the payments referred to in Counts One through Four of this Complaint.

## The Scheme to Defraud

11. Each of STANKOVITS's statements regarding his work status in paragraphs 3 through 9 of this Complaint was false, and was made to advance STANKOVITS's fraudulent scheme to receive DIBs to which he was not otherwise entitled.

12. STANKOVITS worked as an intern at Bruce C. Van Arsdale funeral home in Somerville, New Jersey, from approximately 2006 to approximately 2008. On or about March 29, 2011, STANKOVITS gave the following sworn testimony to members of the Mortuary Committee of the State Board of Mortuary Science of New Jersey, which reflects this testimony:

> QUESTIONER: Internship?
>
> STANKOVITS: It was at Van Arsdale Funeral Home in Somerville, New Jersey.
>
> QUESTIONER: What year did you do your internship?
>
> STANKOVITS: 2006 through 2008, approximately.

Records submitted to the New Jersey Office of the Attorney General reflect that STANKOVITS performed 101 embalmings and 83 funerals at Bruce C. Van Arsdale funeral home during STANKOVITS's internship.

13. STANKOVITS worked at Spotswood Funeral Home in Spotswood, New Jersey from approximately August 2008 until at least approximately 2019. In his March 29, 2011 sworn testimony, STANKOVITS stated that for "between 50 and 70 calls a year," he would "do the removals and the embalming. I do all the – I'll say the grunt work." In addition, in the following sworn testimony on or about April 7, 2021, STANKOVITS stated that he served as a funeral director at Spotswood Funeral Home from 2005 to 2019:

> QUESTIONER: When was the last time you worked to any extent, employed by anybody?
>
> STANKOVITS: I was working on a part-time basis up until a year and a half ago. I was trying to stay involved and do things, you know, but I just kept forgetting things and it didn't work out.

| | | |
|---|---|---|
| QUESTIONER: | | Where were you working then? |
| STANKOVITS: | | I was working at a funeral home. |
| QUESTIONER: | | What kind of work were you doing at the funeral home? |
| STANKOVITS: | | I was working as a funeral director. |
| QUESTIONER: | | Did that entail having to move bodies? |
| STANKOVITS: | | It did, yes. |
| QUESTIONER: | | Were you able to do that? |
| STANKOVITS: | | I hired someone to do that but I would occasionally assist and contribute a little bit of effort towards that. |
| QUESTIONER: | | Okay. Were you terminated or did you resign on your own. |
| STANKOVITS: | | No, neither. I wound up taking a position that I retired. |
| QUESTIONER: | | What was the name of the funeral home? |
| STANKOVITS: | | Spotswood Funeral Home. |
| QUESTIONER: | | How long did you work there? |
| STANKOVITS: | | 2005 to 2019. |

STANKOVITS further testified that Spotswood Funeral Home – in which STANOVITS was a 50% partner – was a "vehicle for . . . retirement[]" savings. Between 2005 and 2019, Spotswood Funeral Home made enough money to pay off an approximate $300,000 to $400,000 mortgage and contribute $350,000 to $450,000 to building renovations.

    14.    STANKOVITS owned and worked at Whiteley Funeral Home, a/k/a Amboy Funeral Home, in South Amboy, New Jersey from approximately 2012 to at least approximately 2018. STANKOVITS acquired Whiteley Funeral Home in approximately 2012. Records from the New Jersey Department of Health, Office

of Vital Statistics and Registry, reflect that STANKOVITS's name appears on 145 certificates of death associated with Whiteley Funeral Home from approximately 2014 until approximately 2018. Videos taken on each of the following dates show STANKOVITS performing work related to Whiteley Funeral Home, including directing visitors, gardening, carrying a casket, leading a funeral procession, and shoveling snow: October 25, 2017, November 13, 2017, November 20, 2017, November 21, 2017, December 1, 2017, December 9, 2017, April 12, 2018, April 17, 2018, April 18, 2018, May 7, 2018, and November 8, 2018.